CHESTER  H.  HAYNES, pro ami.

*vs.*

MAINE  CENTRAL  RAILROAD  COMPANY.

Somerset.    Opinion June 10, 1911.

*Master and Servant.    Railroads.    Fellow Servants.    Train Dispatcher.
Negligence.    Evidence.*

A train dispatcher and the enginemen over whose movements he has direction are not fellow servants; he being a vice principal to such employees.

The duty of a train dispatcher is not fulfilled by giving an order.   When he knows, or in the exercise of due care, ought to know that danger may arise from the execution, negligent or otherwise, of an order, he must act and act promptly.

The master is liable for injuries suffered by his servant arising from the former's own negligence, although the negligence of fellow servants of the latter may have contributed in causing the injury.

Evidence in an action for injury to a railway fireman in a collision *held* to warrant a finding that a train dispatcher was negligent.

On motion and exceptions by defendant.    Motion sustained unless remittitur be made.    Exceptions not considered.

Action on the case to recover damages for personal injuries sustained by the plaintiff, a minor, while acting as fireman upon one

of the defendant's locomotives in a head on collision with another locomotive of the defendant railroad. Plea, the general issue. Verdict for plaintiff for $12,821. The defendant excepted to several rulings made during the trial and also filed a general motion for a new trial.

The case is stated in the opinion.

*Merrill & Merrill*, for plaintiff.

*Forrest Goodwin*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

BIRD, J. This action on the case, in which the plaintiff seeks the recovery of damages for injuries sustained by him while acting as fireman upon one of defendant's locomotives in a collision with another locomotive of defendant, is before this court upon general motion of defendant for a new trial and on exceptions.

The plaintiff claims that one of the causes of the collision was the negligence of the train dispatcher of the defendant. The greater weight of authority is to the effect that a train dispatcher and the engineers and firemen of the trains over whose movements he has direction are not fellow servants but that as to such employees he is a vice principal. While the precise question has, perhaps, never been directly determined in this State, an affirmative answer is indicated by several decisions: *Donnelly* v. *Granite Co.*, 90 Maine, 110, 115, 116; *Hall* v. *Emerson-Stevens Co.*, 94 Maine, 445, 450; *Small* v. *Manufacturing Co.*, 94 Maine, 551, 555; *Hume* v. *Power Co.*, 106 Maine, 78, 82; *Lasky* v. *Railway Co.*, 83 Maine, 461, 472. It is directly so held in *Ricker* v. *Central R. R. Co.*, 73 N. J. L. 751; See same case 9 Ann. Cas. 785 and note, pages 788-790, where the authorities are collected. Upon the undisputed facts of this case we must hold as matter of law the train dispatcher was a vice principal: See *Lasky* v. *Railway Co.*, ubi supra. In that case the facts as to the relation between the superintendent and the train dispatcher are substantially identical with the facts of this case.

The conductor and engineer of the train upon which plaintiff was fireman, having received the train dispatcher's order, signed the train register in the office of the latter at 2.40 P. M. and at the same time indicated thereon the same hour as the time of departure. The train register, as well as the train sheet and time table, lay upon the desk of the train dispatcher and it was his duty to enter the hour of the departure of all trains at once upon the train sheet but it is not necessary to determine his care or want of care in failing to do so. At 2.45 P. M. which, upon the evidence, the jury would be warranted in finding the latest moment at which he had actual knowledge that the entry of the departure of train 301 was 2.40 P. M. and that that train might have departed in violation of the rule requiring it to await the arrival of train 28, the latter was still at West Benton and no report of its departure had been received at Waterville. It did not leave there until 2.48 P. M. Ample time was afforded him to send a telegraphic message or order to West Benton delaying the departure of train 28 until further order. Instead of so doing, after some delay he telephoned to the yard at Waterville and ascertained, about 2.55 P. M., that train 301 had departed. At that time the collision had already occurred. The duty of the train dispatcher is not fulfilled by giving an order. When he knows, or in the exercise of due care, ought to know that danger may arise from the execution, negligent or otherwise, of an order, he must act and act promptly. In this case, there had been "brought to him, considering his position and the responsibilities upon him, a demand for a care which he omitted to observe:" *Santa Fe Pacific R. R.* v. *Holmes*, 202 U. S. 438, 445. His negligence being that of defendant, albeit the negligence of the conductor and engineer were concurrent, we find no occasion to disturb the finding of the jury as to the liability of defendant.

The jury awarded the plaintiff damages to the amount of $12,821. He was a young man of nineteen years of age, of exceptional physical development and condition. His injuries were severe. His right eye was so injured as to require removal and the upper surface of the lower portion of the orbit was shattered; the upper jaw was fractured, one tooth was lost and another was broken; the

face was cut from a point over the right eye through the nose and upper lip to the chin and the knee was wrenched. At the end of two or three months the health of plaintiff was practically, if not entirely, restored and all external wounds were then long since healed. At the time of trial there was still a discharge of natural secretions from about the eye which was disagreeable and offensive and the nose was disfigured and unsightly. But it is apparent from the evidence that the discharges from the eye socket can be obviated and the appearance of the nose greatly improved by minor surgical operations. The disfigurement from loss of the eye itself can obviously be greatly lessened. The visual sense must of course be considerably impaired and the danger by accident of complete blindness much increased. It is questionable, while his physical powers seem re-established, if he be capable of earning as much wages as before the accident. Upon a careful examination of the evidence we are reluctantly forced to conclude that the verdict is excessive. Scrupulously regarding all the elements of damage, we must order a new trial unless the plaintiff remits all of the verdict in excess of $7500.

It becomes unnecessary to consider the exceptions, in view of the conclusions reached upon plaintiff's motion.

> *Motion sustained. New trial ordered unless plaintiff within sixty days after receipt of the certificate of decision of this court remits all of the verdict in excess of $7500.*